**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARCUS LIMES | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:19-cv-03225-PX |
| | * | |
| AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES UNION (LOCAL 2250) | * | |
| | * | |
| Defendant. | * | |

\*\*\*

**MEMORANDUM OPINION**

Pending before the Court is the motion to dismiss filed by Defendant American Federation of State, County and Municipal Employees, Local 2250. ECF No. 4. The Court has carefully reviewed the pleadings and finds that no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

**I.   Background**

Although the Complaint is hardly a model of clarity, the Court considers the following facts as true and most favorably to Plaintiff Marcus Limes ("Limes"). Since at least 2011, Limes has worked as a painter for Prince George's County Public Schools ("PGCPS"). ECF No. 2 ¶¶ 1, 4, 5, 8. Limes has also been a dues-paying member of the American Federation of State, County and Municipal Employees, Local 2250 ("Local 2250" or "the Union"), which represents approximately 6,000 Maryland area municipal support staff. *Id.* at 2, ¶ 8. The Union is responsible for filing and pursuing grievances with employers on behalf of its members. *Id.* ¶¶ 2, 4, 8, 13.

Limes' employment disputes with PGCPS began in 2011, when he was forced to work

outside his classification as "Painter I" and, as a result, was underpaid. *Id.* ¶¶ 1–2, 4. From roughly July 2011 to early 2013, Limes sought the Union's assistance to no avail. *Id.* ¶ 4, 9. Limes met with union representatives for the first time to discuss his claims in April 2013. *Id.* ¶ 9. The Union ultimately informed Limes that it was unable to prove he had worked outside his classification, and that his best option was to apply for a more senior Painter II position once available. *Id.* ¶ 10.

In October 2013, acting on the advice of the Union, Limes applied to fill a "Painter II" position. *Id.* ¶ 11. Limes did not receive an interview and so, once again, turned to Local 2250 for help. *Id.* The Union filed a grievance on Plaintiff's behalf in January 2014, which resulted in PGCPS adjusting Limes' job position and salary.[1] *Id.* ¶ 13. But then, PGCPS stripped Limes of the Painter II classification because the position had already been filled by another employee and two employees could not simultaneously work under the same classification. *Id.* ¶¶ 14, 15.

On April 1, 2014, the Union filed another grievance on Limes' behalf related to his working outside classification. *Id.* ¶ 16. PGCPS and the Union settled this claim, but to Limes' dissatisfaction. *Id.*

On April 11, 2014, the Union filed another grievance on Limes' behalf in connection with his application for the "Painter II" position. *Id.* ¶ 17. This grievance stemmed from PGCPS first misrepresenting to Limes that he failed the written exam for the Painter II position, when in fact he had passed, and then extending the position to a younger, less experienced, white male. *Id.* ¶¶ 17–18, 40, 43, 46. Limes was then made to train the new hire. *Id.* ¶ 46. Limes last heard from the Union about this grievance in July 2014, when the Union purportedly was pursuing arbitration for Limes. *Id.* ¶ 20. Arbitration, however, never took place. *Id.* ¶¶ 20, 43.

---

[1] Although the Complaint avers the grievance was filed on January 25, 2013, *id.* ¶ 13, this date precedes the operative events forming the basis for the grievance. Limes appears to have meant January 25, 2014.

On January 15, 2015, Limes filed a formal complaint with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 21.[2] Soon after, Limes received death threats on the sign-in sheet at work and was given more difficult jobs than before he had lodged his EEOC complaint. *Id.* Limes received his EEOC right-to-sue letter on May 6, 2019. *Id.*

Plaintiff timely filed suit in the Circuit Court for Prince George's County, Maryland solely against the Union, which Local 2250 removed to this Court. ECF No. 1-2. The Complaint asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Maryland Fair Employment Practices Act ("MFEPA"), Md Code, State Gov't § 20–601 *et seq.*; and Prince George's County Local Ordinance, PGC Code § 2-224. In Count I, Limes brings claims of hostile work environment under Title VII and MFEPA. In Count II, Limes asserts retaliation under Title VII and companion state and local provisions. Count III asserts retaliation under the ADEA and state and local law. In Counts IV and V, Limes alleges he suffered age-based discrimination in violation of the ADEA and race-based discrimination in violation of Title VII and MFEPA.[3] Local 2250 now moves to dismiss the Complaint entirely. ECF No. 4.

## II.     Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only

---

[2] The Complaint is silent as to whether Limes filed his formal EEOC charge against PGCPS, the Union, or both. The Union does not challenge the sufficiency of the Complaint on exhaustion grounds. Thus, the Court infers that at a minimum, the charge preserved claims against the Union.

[3] The Court understands Count IV to be asserting an age-based discrimination claim in violation of the ADEA and hereinafter refers to Plaintiff's un-numbered count in the Complaint as Count V. *See* ECF No. 2 at 11.

satisfy the standard of Rule 8(a), requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the Complaint must make some factual showing "rather than a blanket assertion[] of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In other words, the Complaint must set out facts that render the plaintiff's claims facially plausible or permit the reasonable inference that the defendant is liable for the alleged violations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**III.   Analysis**

Defendant argues that dismissal is warranted first because the Complaint describes discriminatory and retaliatory acts carried out by PGCPS as Limes' employer, not the Union, and so the Union cannot be held liable; and second, because the Complaint is best understood to raise "fair representation" claims, which are time barred. ECF No. 4-1. The Court addresses each argument in turn.

**A.   Local 2250 as a Proper Defendant**

Title VII, the ADEA, the MFEPA, and local law all clearly authorize claims against unions for engaging in discriminatory employment practices. *See Jones v. Am. Postal Workers Union*, 192 F.3d 417, 425 (4th Cir. 1999) (citing *Jennings v. Am. Postal Workers Union*, 672 F.2d 712, 715 (8th Cir. 1982)); *Beck-Pell v. Sheet Metal Workers Local Union #100*, No. PWG-

17-2329, 2019 WL 3841935, at *5 (D. Md. Aug. 15, 2019).  Title VII expressly prohibits a labor organization from discriminating against any individual because of his race, color, religion, sex, or national origin, or causing or attempting to cause an "employer to discriminate against an individual in violation of this section."  42 U.S.C. §§ 2000e–2(c)(1), (3).  State statutory and local analogues include similar provisions, as does the ADEA.  *See* 29 U.S.C. §§ 623(c)(1)-(3) (ADEA); MD Code, State Gov't § 20-606(c) (MFEPA); PGC Code § 2-224(a)(1) (Prince George's County Code).  Each adopt the same substantive standards and burdens of proof animating Title VII claims.  *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 498 n.2 (D. Md. 2019); *Royster v. Gahler*, 154 F. Supp. 3d 206, 215 (D. Md. 2015), *abrogated on other grounds by Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019); *Alexander v. Marriott Intern, Inc.*, No. RWT-09cv2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8 (2007).  This Court, therefore, reviews the sufficiency of such claims brought under federal, state, and local law together.  *See Dyer v. Oracle Corp.*, No. PWG-16-521, 2016 WL 7048943, at *2 n.5 (D. Md. Dec. 5, 2016); *Whittaker v. David's Beautiful People, Inc.*, No. DKC-14-2483, 2016 WL 429963, at *2 (D. Md. Feb. 4, 2016).

A labor union can be liable under these provisions when it "deliberately refus[es] to pursue a [racial or age-based] harassment grievance" on plaintiff's behalf.  *Murphy v. Adams*, No. 12–1975, 2013 WL 398753, at *2 (D. Md. Jan. 31, 2013) (citing *Agosto v. Corr. Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 667 (1987), *superseded on other grounds by statute*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004)).  When a union knows of actual discrimination and deliberately refuses to file a grievance, discriminatory motive is

inferred even in the absence of comparator evidence. *See Beck-Pell*, 2019 WL 3841935, at *5; *Murphy*, 2013 WL 398753, at *2 (citations omitted). Likewise, a union can be liable if the Union "instigates or actively supports the Employer's discriminatory acts." *Murphy*, 2013 WL 398753, at *3 (internal quotation marks omitted) (quoting *Hubbell v. World Kitchen, LLC*, 717 F. Supp. 2d 494, 501 (W.D. Pa. 2010) (quoting *Angelino v. N.Y. Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999))).

Liberally construed, Limes' allegations plausibly establish an entitlement to relief with respect to Counts IV and V, the discrimination claims. Limes avers that he applied for a more senior position in late 2013 and that PGCPS told him, wrongly, that he had failed the application test. ECF No. 2 ¶¶ 17–18. PGCPS next hired a younger and substantially less-qualified white male and then forced Limes to train him. *Id.* ¶¶ 17–18, 43, 46. This took place against the backdrop of Limes having worked outside classification and without proper compensation for two years. *Id.* ¶¶ 1, 4, 6–7. Limes also made Local 2250 acutely aware of PGCPS' alleged discrimination and sought its assistance via the grievance process. *Id.* ¶ 11. The Union evidently failed to pursue remedial action on Limes' behalf, despite assuring him to the contrary. *Id.* ¶¶ 17, 20. When viewed in the light most favorable to Limes, the Complaint makes plausible that the Union engaged in race and age-based discrimination by deliberately refusing to pursue a grievance on Limes' behalf.

As for the remaining counts, hostile work environment (Count I) and retaliation (Counts II and III), Limes has pleaded no facts that make either claim plausible as to the Union. A plaintiff is subjected to a hostile work environment when his employer's conduct is sufficiently severe or pervasive as to alter the conditions of employment and is motivated by discriminatory animus. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015). Although

the Court is hesitant to find that Limes has pleaded a sufficiently hostile work environment, even if he has, nothing in the Complaint suggests that the Union ever knew about it, let alone was prompted to take action on Limes' behalf.  Put differently, the grievances about which the Union knew and should have pursued solely concerned PGCPS' denying Limes the Painter II position on account of his age and race.  Accordingly, the hostile work environment claim must be dismissed.

With respect to retaliation, Limes has perhaps plausibly averred that he engaged in protected activity and that in response, adverse action (receiving less favorable work assignments and death threats) was taken against him.  *See Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001).  But the Court cannot discern from the Complaint whether the Union had anything to do with the retaliatory acts.  As with the hostile work environment claim, nothing suggests that the Union had any knowledge of, or participation in, these events, or that Limes ever sought the Union's assistance to pursue grievances based on the retaliatory conduct.  To the contrary, Limes' last communication with the Union took place in July 2014, well before Limes filed his EEOC charge.  The retaliation claim, too, must be dismissed.

The Court recognizes that Limes has not sought to amend his Complaint and that the case is in its infancy.  The Court will dismiss these claims without prejudice, in recognition that with discovery, he may ascertain facts that make the dismissed claims viable.  *Cf. Mclean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009) (citation omitted) (A court should not dismiss a "potentially meritorious claim . . . unless its deficiencies are truly incurable."); *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) (unpublished).  If appropriate, Limes may seek leave to amend the Complaint for good cause shown.

### B. Fair Representation

The Union next argues that Limes' claims are more properly framed as fair representation causes of action brought pursuant to the National Labor Relations Act and companion state provisions. 29 U.S.C. § 158(b) (NLRA); MD Code, State Pers. & Pens. § 3-306 (b); ECF No. 4-1 at 8. Consequently, says the Union, the claims were brought well beyond the applicable limitations periods and are thus time barred. Limes, however, rightly points out that he has not brought a fair representation claim. Limes expressly crafts his causes of action as brought pursuant to Title VII, the ADEA, and companion state and local discrimination statutes. *See Murphy*, 2013 WL 398753, at *4. Accordingly, the limitations period for fair representation claims is irrelevant. Limes' discrimination claims survive challenge.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss Counts I, II, and III without prejudice and denies the motion as to Counts IV and V. ECF No. 4. A separate Order follows.

April 20, 2020
Date

/S/
Paula Xinis
United States District Judge